IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ANCHORAGE SNF, LLC d/b/a ANCHORAGE HEALTH CARE CENTER, *et al.*, | * | |
| | * | |
| | * | |
| *Plaintiffs*, | * | |
| | * | Civil Action No. 1:22-cv-00166-JRR |
| **v.** | * | |
| | * | |
| LOURDES R. PADILLA, in her capacity as the MARYLAND SECRETARY OF HUMAN SERVICES, *et al.*, | * | |
| | * | |
| *Defendants*. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 9; the "Motion"). The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2021). For the reasons that follow, by accompanying order, the Motion will be denied as to Count I and granted as to Counts II and III.

## BACKGROUND[1]

On January 21, 2022, Plaintiffs filed a Complaint for declaratory and injunctive relief alleging Defendants failed to pay Plaintiffs' provider claims for Medicaid eligible skilled nursing facility residents. (ECF No. 1, p. 2.) Plaintiffs are seventeen Ohio limited liability companies operating 24-hour skilled nursing home facilities in Maryland. *Id.* ¶¶ 5-21. Defendant Padilla is the Secretary of the Maryland Department of Human Services ("DHS"); Defendant Schrader is the Secretary of the Maryland Department of Health ("MDH"). *Id.* ¶¶ 22-23.

---

[1] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Complaint.

As Secretary, Ms. Padilla is responsible for operation of DHS.  *See* MD. CODE ANN., HUMAN SVS. §§ 2-203; 2-210-13.  As Secretary, Mr. Schrader is responsible for operation of MDH, as well as implementation and enforcement of the Heath-General Article, including the Medicaid Program.  *See* MD. CODE ANN., HEALTH-GEN. §§2-101; 2-102(a), (b)(2); 2-104(m); and 15-103(a)(1).  Pursuant to an agreement between DHS and MDH, DHS is responsible for making Medicaid Long-term Care ("MA-LTC") eligibility determinations.

The Maryland State Medicaid Program operates under the statutory authority of Title XIX of the Social Security Act Medical Assistance Program.  (ECF No. 1, ¶ 56.)  Defendants receive federal funds and are required to administer the Medicaid Program in compliance with the Federal Medicaid Act, 42 U.S.C. § 1396 (a)(8).  *Id.*  ¶ 57.  Under federal law, Defendants are required to make an eligibility determination within forty-five days of receiving an application for benefits. Every Medicaid applicant must be given notice and the right to appeal any adverse eligibility determination.  *Id.* ¶¶ 62-63.

Plaintiffs allege that the State of Maryland Medicaid Program issued Notices of Eligibility to residents who were at one time admitted to one of the named Plaintiffs' nursing facilities.  (ECF No. 1, ¶¶ 25-26.)  A Notice of Eligibility indicates to the Medicaid applicant that he or she has been approved for benefits and provides that claims shall be paid to the provider.  *Id.*  ¶¶ 25, 28. Maryland created the Problems Resolution Unit ("PRU"), which has the ability to reconsider and redetermine an applicant's eligibility for MA-LTC benefits following issuance of a Notice of Eligibility.  *Id.*   There is no appeal process should the PRU terminate eligibility for benefits, despite the previous issuance of a Notice of Eligibility.  *See generally* (ECF No. 1.)

Plaintiffs allege that as a result of the PRU's redetermination of residents' eligibility for MA-LTC, Plaintiffs have not been paid for numerous outstanding claims for over one-hundred

Medicaid applicants or recipients. *Id.* ¶ 26.   Instead of paying the claims submitted by Plaintiffs, the PRU denies the claim without notice or opportunity to appeal the redetermination decision. *Id.* ¶ 29.

The Complaint contains three counts: Violation of Due Process under 42 U.S.C. § 1983 (Count I); Violation of the Federal Medicaid Act's Reasonable Promptness Requirement (Count II); and Violation of 42 U.S.C. § 1396(a) (Count III).  Plaintiffs request the court: issue declaratory judgment that (1) Defendants are required to adhere to the mandates of the Medicaid Act; and (2) Defendants' failure to afford due process and prompt payment of claims submitted for approved applicants who received proper Notices of Eligibility and who then were re-classified as ineligible via the PRU is unlawful.  Additionally, Plaintiffs request the court issue permanent injunctive relief requiring Defendants to: (1) resolve issues presented to the PRU and issue a notice within 90 days; (2) bring their MA-LTC application processing procedures into compliance with 42 U.S.C. § 1396(a)(8)'s reasonable promptness requirement; (3) afford an appeal process for PRU redetermination of eligibility denials; (4) prospectively process and remit payment on billed claims within sixty (60) days; (5) provide to MA-LTC applicants and beneficiaries notice of adverse PRU determinations; and (6) provide to MA-LTC applicants and beneficiaries an appeal process for redeterminations denying previously approved MA-LTC.[2]  (ECF No. 1, pp. 20-21.)

Defendants move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that Plaintiffs lack standing and fail to state a claim upon which relief can be granted.  (ECF No. 9, p. 2.)

---

[2] It is not clear to the court how requests 3 and 6 differ (reflected in the Complaint at p. 20 as requests E and H of the *ad damnum*), but the distinction, if there is one, is immaterial for purposes of resolution of the Motion.

## LEGAL STANDARDS

### *Federal Rule of Civil Procedure 12(b)(1)*

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019). Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge. *Id.* A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction." *Id.* A factual challenge asserts "that the jurisdictional allegations of the complaint [are] not true." *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Kerns*, 585 F.3d at 192 (instructing that in a facial challenge to subject matter jurisdiction the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration.")). "[I]n a factual challenge, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'" *Id.* The court finds that Defendants raise facial challenges to subject matter jurisdiction; accordingly, the 12(b)(1) Motion will be evaluated in accordance with the procedural protections afforded under Rule 12(b)(6), which is to say that the facts alleged in the Complaint will be "taken as true" per *Trump* and *Kerns*.

Defendants assert a facial subject matter jurisdiction challenge on two bases. First, Defendants argue that Plaintiffs' allegations do not establish standing. *See generally* (ECF No. 9-1, Section IV. A.) Alternatively, Defendants argue by way of a footnote that, if the Complaint

4

alleges colorable claims, Defendants enjoy Eleventh Amendment sovereign immunity to the extent the Complaint seeks retrospective relief.  (ECF No. 9-1, p. 17, n.6.)

### *Federal Rule of Civil Procedure 12(b)(6)*

A motion asserted under Rule 12(b)(6) "tests the legal sufficiency of a complaint." It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244 (citing *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). The court, however, is "…not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Id.* (citing *District 26, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083, 1085 (4th Cir. 1979)).

## ANALYSIS

## I.     Consideration of Exhibits

As an initial matter, Defendants attach one exhibit to their Motion: Exhibit A – Memorandum of Agreement Between Maryland Department of Health and Maryland Department of Human Services (ECF No. 9-2; the "MOA".)  Plaintiffs attach two exhibits to their Opposition: Exhibit A – *Saint Anthony Hospital v. Theresa A. Eagleson*, Case No. 1:21-cv-2325 (7th Cir. Jul. 5, 2022.) (ECF No. 12-2; the "*Saint Anthony* Case"); and Exhibit B – MA Problem Resolution Division – FAQs (ECF No. 12-3; the "FAQs").

In ruling on a motion to dismiss pursuant to Rule 12(b)(6),[3] a court usually does not consider evidence outside of the complaint. A court may consider documents attached to a motion to dismiss if the document is "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.,* 190 F.3d 609, 618 (4th Cir. 1999)). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake,* 794 F. Supp. 2d. at 611 (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). "In addition to integral and authentic exhibits, on a 12(b)(6) motion the court 'may properly take judicial notice of matters of public record.'" *Id.* (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

The MOA sets forth the purpose of the agreement, duties, and obligations of MDH and DHS with respect to eligibility determinations. Plaintiffs' alleged property rights at issue in this litigation are premised on the eligibility determinations made by Defendants as set forth in the MOA. The rights at issue, however, do not arise out of the MOA; instead, Plaintiffs' alleged rights arise out of the Constitution and various federal statutory and regulatory conditions. The MOA was executed to effectuate the requirements of Title XIX of the Social Security Act and applicable federal regulations. Plaintiffs' rights as Medicaid providers, whatever those rights may be, do not exist because of the MOA. Accordingly, the court finds that the MOA is not integral to the Complaint and will not consider it for purposes of resolution of the Motion.

With respect to Plaintiffs' exhibits, the court finds that the *Saint Anthony* Case is a matter of public record, and the court may take judicial notice of that exhibit. The FAQs do not give rise

---

[3] As set forth earlier, the court will treat the 12(b)(1) motion as a 12(b)(6) motion for procedural purposes because it raises a facial challenge.

to Plaintiffs' rights, but rather answer questions related to the submission and payment of claims. The information in the FAQs pertains to the merits of Plaintiffs' claims; the FAQs do not give rise to the claims or alleged rights on which they rest. Accordingly, the court will not consider Exhibit B attached to Plaintiffs' Opposition at this stage.

II. **12(b)(1) MOTION – COUNTS I AND II**

A. **Sovereign Immunity**

Defendants argue that even if the court finds that the Complaint survives a 12(b)(6) contest, Defendants enjoy sovereign immunity under the Eleventh Amendment, except to the extent that the claims seek prospective relief. (ECF No. 9-1, p. 17, n. 6.)   Although Defendants raise the sovereign immunity argument in the alternative (and only by way of a footnote), a finding that Defendants enjoy sovereign immunity on all claims, presents a jurisdictional bar to the court's adjudicative power on those claims. *Cunningham v. General Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018) (holding that "[s]overeign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.") (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)).   Accordingly, the court will address Defendants' sovereign immunity arguments at the outset.   In support, Defendants argue that the wording of Paragraphs C, F, and I, in the Requests for Relief section of the Complaint suggests that Plaintiffs seek retrospective relief, which is not permitted under the *Ex parte Young* exception, discussed below.   *Id.*

 Because it is akin to an affirmative defense, Defendants bear the burden of demonstrating that they are protected by sovereign immunity. *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014).   "[F]or purposes of the Eleventh Amendment, a state official acting in his official capacity is protected from a damages action by the same immunity." *Ballenger v. Owens,* 352 F.3d 842, 844-45 (4th Cir.2003) (citations omitted).

In *Ex parte Young,* 209 U.S. 123 (1908), the Supreme Court established a narrow exception to a state official's Eleventh Amendment immunity to suit in federal court.  Under the *Ex parte Young* doctrine, "the Eleventh Amendment does not preclude private individuals from bringing suit against State officials for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law." *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 292 (4th Cir. 2000). The *Ex parte Young* doctrine provides that "a federal court has jurisdiction over a suit against a state officer to enjoin official actions that violate federal law, even if the State itself is immune from suit under the Eleventh Amendment." *Idaho v. Coeur D'Alene Tribe,* 521 U.S. 261, 288 (1997).   "The Young doctrine recognizes that if a state official violates federal law, he is stripped of his official or representative character and may be personally liable for his conduct; the State cannot cloak the officer in its sovereign immunity." *Id.* (citing *Young*, 209 U.S. at 159-160).  "[A] court decree enjoining a State officer from committing future violations of federal law generally will not upset the careful federal balance established by the Constitution and confirmed by the Eleventh Amendment." *Id.* at 269.

"To preserve this balance, however, this court must ensure that the doctrine of sovereign immunity remains meaningful, while also giving recognition to the need to prevent violations of federal law." *Coeur D'Alene Tribe,* 521 U.S. at 269 (internal quotations omitted).  "Just because a private citizen's federal suit seeks declaratory injunctive relief against State officials does not mean that it must automatically be allowed to proceed under an exception to the Eleventh Amendment protection." *Bell Atl. Md., Inc. v. MCI Worldcom, Inc.*, 240 F.3d 279, 294 (4th Cir. 2001).   "Such empty formalism would improperly sacrifice the real interests served by the Eleventh Amendment." *Id.*  Rather, just as the Court did in *Coeur D'Alene Tribe*, this court must evaluate the degree to which the State's sovereign interest would be adversely affected by a

federal suit seeking injunctive relief against State officials, as well as the extent to which federal, rather than State, law must be enforced to vindicate the federal interest. *Bragg,* 248 F.3d at 293.

The *Ex parte Young* fiction is an exercise in line drawing. *Coeur D'Alene Tribe,* 521 U.S. at 280. "The nature of a suit as one against the state is to be determined by the essential nature and effect of the proceeding." *Ford Motor Co. v. Department of Treasury of Ind.,* 323 U.S. 459, 464 (1945). "When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Id.* That notwithstanding, "[t]he Supreme Court has [] repeatedly recognized that, 'relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury.'" *Virginia Hosp. Ass'n v. Baliles,* 868 F.2d 653, 662 (4th Cir. 1989) (quoting *Papasan v. Allain*, 478 U.S. 265, 278 (1986)).

Defendants argue that paragraphs C, F, and I of the *ad damnum* suggest, in whole or in part, that Plaintiffs seek retrospective relief:

> C. Issue permanent injunctive relief requiring the Defendants within ninety (90) days to resolve issues presented to the PRU and issue a notice;
>
> F. Issue permanent injunctive relief requiring the Defendants to prospectively process and remit payment on all billed claims within sixty (60) days;
>
> I. Declare unlawful the Defendants' failure to afford Due Process and Prompt payment of claims submitted for approved applicants who received proper Notices of Eligibility;

(ECF No. 1, p. 20-21; ECF No. 9-1, p. 18, n.6.)

The Complaint further alleges:

> Approved Notices of Eligibility are not being paid, and to effectuate this end, Maryland created another entity, the Problems Resolution Unit, or PRU, where Notices of Eligibility are redetermined without

issuing redetermination notices; that is, they are determined a second time, without issuing redetermination notices. A Notice of Eligibility indicates that claims shall be paid to the provider. If Maryland/PRU wanted to change the Notice of Eligibility, Maryland/PRU would have to issue a redetermination notice while paying any claims in the interim. This is not occurring.

There is no authority that the CMS approved Maryland the use of PRU to invalidate Notices of Eligibility and subject approved applicants to an unappealable "redetermination denial."

The Defendants have failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

(ECF No 1, ¶¶ 28, 44-45.)

Plaintiffs' Complaint alleges that the procedures utilized by the PRU violate their due process rights and do not comply with federal law. (*See generally* ECF No. 1.) In so alleging, Plaintiffs complain of ongoing violations of the United States Constitution, federal statutes and regulations. Plaintiffs' requested relief seeks to have Defendants update the redetermination procedure to comply with federal law. The fact that Defendants may have to spend state funds to effect compliance with federal law does not remove them from the *Ex Parte Young* exception. *Virginia Hosp. Ass'n,* 868 F.2d at 662. Plaintiffs' requested relief does not rise to the level of making the State the real party in interest.

In support of their sovereign immunity argument, Defendants cite to *Edelman* v. *Jordan,* 415 U.S. 651 (1974). The *Edelman* Court found that the relief granted by the federal district court required state officials to release and remit retroactive federal benefits. The Court held:

But that portion of the District Court's decree which petitioner challenges on Eleventh Amendment grounds goes much further than any of the cases cited. It requires payment of state funds, not as a necessary consequence of compliance in the future with a

10

> substantive federal-question determination, but as a form of compensation to those whose applications were processed on the slower time schedule at a time when petitioner was under no court-imposed obligation to conform to a different standard. While the Court of Appeals described this retroactive award of monetary relief as a form of "equitable restitution," it is in practical effect indistinguishable in many aspects from an award of damages against the State. It will to a virtual certainty be paid from state funds, and not from the pockets of the individual state officials who were the defendants in the action. It is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials.

*Edelman,* 415 U.S. at 668.

Here, unlike *Edelman,* Plaintiffs do not demand that Defendants  pay monies to Plaintiffs to make them whole for past wrongs; rather, Plaintiffs seek to bring the redetermination process administered by the PRU in compliance with federal law.  If the court grants Plaintiffs' requested relief, Defendants may be required to pay claims which were not properly processed, but it may still deny claims on proper grounds.  The requested relief seeks to ensure that if Defendants make redeterminations regarding eligibility, thereby affecting the payment of claims, Defendants do so in accordance with federal law.  Should Plaintiffs prevail on the merits, updating and modifying policies to ensure compliance with federal law is necessary to vindicate Plaintiffs' federal rights going forward.  Accordingly, this action falls within the *Ex parte Young* exception and will not be dismissed should Plaintiffs prevail.

**B.      <u>Standing</u>**

In Count I, Plaintiffs allege that Defendants violated their due process rights under § 1983. Count II alleges violations of the Federal Medicaid Act's reasonable promptness requirement. Defendants argue that the court lacks subject matter jurisdiction to grant relief under Counts I and II because the rights protected under the Constitution and the individual rights protected under the federal Medicaid Act belong to the residents living at the nursing homes operated by Plaintiffs and

not Plaintiffs themselves.  Accordingly, Defendants argue, Plaintiffs are without standing to pursue the claims in Counts I and II of the Complaint.  (ECF No. 9-1, p. 11.)

"Article III of the United States Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'"  *Nat'l Fed'n of the Blind, Inc., v. Wal-Mart Assocs,.* 566 F. Supp. 3d 383, 390 (D. Md. 2021) (quoting U.S. CONST. ART. III, § 2.))  "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III" that gives meaning to these constitutional limits by "'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).  Article III standing requires an individual plaintiff to "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc., v. Robins*, 578 U.S. 330 (2016).  To demonstrate an injury-in-fact, a plaintiff must allege "an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent." *Lujan*, 504 U.S. at 560-61 (citations omitted); *Griffin v. Dep't of Lab. Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019).

### 1.     *Count I – Due Process*

Defendants argue that the facts supporting Plaintiffs' due process claim under § 1983 is based on the alleged denial of MA-LTC eligibility to Plaintiffs' residents after they had been found eligible, without an opportunity to appeal the denials.  Based on these allegations, Defendants assert that the only persons who could assert their constitutional due process rights were violated by PRU redeterminations are Plaintiffs' residents.  (ECF No. 9-1, p. 12.)  Plaintiffs respond that they have standing to assert a claim for violation of procedural and substantive due process under § 1983 because they have a protected property interest in receiving payments for services rendered,

and they have suffered both threatened and actual injury by being denied Medicaid payments for services rendered to MA-LTC eligible residents.  (ECF No. 12-1, p. 4.)

The first step in the court's due process analysis is to determine whether Plaintiffs have a constitutionally protected property interest.  In order for Plaintiffs to have a property interest in a governmental benefit, such as Medicaid reimbursement payments, Plaintiffs, "clearly must have more than an abstract need or desire for it.  [They] must have more than a unilateral expectation of it.  [They] must, instead, have a legitimate claim of entitlement to it." *Bd. of Reagents v. Roth*, 408 U.S. 564, 577 (1996).  Interest in a governmental benefit becomes a property interest for due process purposes "if there are rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).

The Complaint alleges:

> Plaintiffs are owed for numerous outstanding claims for Medicaid Long-term Care ("MA-LTC") applicants whose benefits have been approved with Notices of Eligibility, but the approved benefits have not been paid to the respective facilities.

> Plaintiffs have not been paid for numerous outstanding claims for over one hundred (100) Medicaid applicants or recipients who are now or had at one time been admitted to one of the named Plaintiffs' nursing facilities. Said outstanding claims have not been paid by the Maryland Medicaid program.

> Plaintiffs have suffered both threatened and actual injury by being denied Medicaid payments for services rendered to residents in their facilities.

> Approved Notices of Eligibility are not being paid, and to effectuate this end, Maryland created another entity, the Problems Resolution Unit, or PRU, where Notices of Eligibility are redetermined without issuing redetermination notices; that is, they are determined a second time, without issuing redetermination notices. A Notice of Eligibility indicates that claims shall be paid to the provider. If Maryland/PRU wanted to change the Notice of Eligibility,

13

Maryland/PRU would have to issue a redetermination notice while paying any claims in the interim. This is not occurring.

By definition, redetermination and recoupment notices are required to have appeal rights. In addition, if Maryland/PRU wanted to recover any funds paid out in claims, Maryland/PRU would have to initiate a recoupment, which would also have appeal rights. If Maryland/PRU followed proper procedures rather than bypassing the redetermination and recoupment steps, providers would clearly have a property interest in any redetermination or recoupment and, therefore, appeal rights. *Matter of White Plains Nursing Home v. Whalen* 53 A.D.2d 926, 927 (1976) (concluding that a nursing home has a property interest in alleged overpayments). Instead, PRU simply denies, with no due process, properly submitted claims to avoid paying.

Notices of Eligibility were already issued by Maryland, and then the PRU unit terminated eligibility and began a redetermination process.

Without appeal rights, which Defendants' policy controls, there is no due process and no administrative recourse – which is the harm, and money is owed – which is the damage.

The Seventh Circuit Court of Appeals recently held that Medicaid reimbursement rates are the type of entitlement that triggers due process, and the providers, akin to the Plaintiffs in this matter, established a property interest such that any alteration must be conducted with due process. Rock *River Health Care, LLC v. Eagleson*, 14 F.4th 768 (7th Cir. Oct. 4, 2021).

A healthcare provider "certainly has a property interest in the ongoing Medicare payments for services rendered to patients." *Accident, Injury and Rehabilitation, PC v. Azar*, 2018 WL 4625791 at *7 (D. S.C. Sept. 27, 2018) (vacated on other grounds by Accident, Injury and Rehabilitation, PC v. Azar, 943 F.3d 195 (4th Cir. 2019)); *Med-Cert Home Care, LLC v. Azar*, 2020 WL 117060 at *3 (N.D. Texas March 11, 2020) ("Med-Cert has a valid property interest in receiving Medicare payments for services rendered."); *Infinity Healthcare Services, Inc. v. Azar*, 349 F. Supp. 3d 587 (S.D. Texas Nov. 19, 2018) (finding that plaintiff had a property interest in the Medicare payments for services rendered), *Angels of Care Home Health, Inc. v. Azar*, 2019 WL 1101286 at *2 (N.D. Texas Feb. 13, 2019) (concluding plaintiff had a property interest in payment for services rendered), *Adams EMS, Inc. v. Azar*, 2018 WL 5264244 at *10 (S.D. Texas Oct. 23, 2018) (finding plaintiff had "a

property interest in receiving and retaining the Medicare payments it has earned").

The Medicaid Statutes require Maryland to provide benefits to eligible individuals; however, until the state agency remits payment for long-term care services provided to eligible beneficiaries, the Plaintiff nursing homes are the entities who have provided services to their patients.

In light of the Defendants' failure to comply with federal and state Medicaid laws, the Plaintiffs have been unable to recover significant amounts of "approved" benefits revenue as payment for the skilled nursing care provided to residents who were issued proper Notices of Eligibility, but then later denied through PRU's redetermination process. Because PRU does not afford appeal rights, these benefits, and the payments that they represent, have been unjustly taken without due process of law.

(ECF No. 1, ¶¶ 25-31, 35, and 46.)

Here, Plaintiffs allege a property interest in the form of a governmental benefit: Medicaid funds for approved services rendered by Plaintiffs.  Further, the Complaint ably alleges mutually set expectations between Plaintiffs and Defendants:  The Notice of Eligibility provides that claims shall be paid to the provider; both Plaintiffs and Defendants understand that once a Notice of Eligibility has been issued to a resident of a skilled nursing facility operated by Plaintiffs, Plaintiffs are entitled to payment of claims for the services they render.  If Defendants determined that Plaintiffs were overpaid for a submitted claim, any redetermination or recoupment procedures would require notice and appeal rights.

Further, the court is persuaded by the logic and analysis of *Accident, Injury and Rehabilitation, PC*, *Med-Cert Home Care, LLC*, *Infinity Healthcare Services*, *Inc.*, *Angels of Care Home Health, Inc.,* and *Adams EMS, Inc.*, *supra*.  The courts in those cases determined the medical providers had a property interest in payments for services previously rendered.  For the purposes of the Motion, the court is satisfied that once an applicant/resident receives a Notice of Eligibility, Plaintiffs' property interest in payment for services rendered is born.  The Notice of Eligibility

15

signals to the applicant and Plaintiffs that the applicant is eligible for the services offered by Plaintiffs, and Plaintiffs will be paid for those services once rendered.  Accordingly, the court finds, that Plaintiffs have a property interest in payments for services rendered to eligible residents.

Because Plaintiffs have a property interest in the payments, they have alleged an actual injury sufficient to establish standing as to Count I.  Accordingly, the Motion will be denied as to the Rule 12(b)(1) subject matter jurisdiction challenge to Count I.

### 2.    *Federal Rights - Counts II and III*

Count II of the Complaint asserts violations of the Federal Medicaid Act's reasonable promptness requirement under 42 U.S.C. §§ 1396a(a)(8) and seeks relief under § 1983.  (ECF No. 1, ¶¶ 89, 93.)  Count III of the Complaint asserts a cause of action for violation of 42 U.S.C. 1396a(a)(30)A, but does not seek relief under § 1983.  *Id.* ¶ 100.

The Supreme Court has recognized that "whether a statutory violation may be enforced through § 1983 'is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute.'" *Gonzaga Univ. v. Doe,* 536 U.S. 273, 283 (2002) (quoting *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508, n.9 (1990)).  Both inquiries begin with determining whether Congress intended to create a federal right.  *Id.*  "[T]he question whether Congress . . . intended to create a private right of action [is] definitively answered in the negative" where "a statute by its terms grants no private rights to any identifiable class." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 576 (1979).  "For a statute to create such private rights, its text must be 'phrased in terms of the persons benefited.'"  *Gonzaga,* 536 U.S. at 284 (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 692, n.13, (1979)).  "But even where a statute is phrased in such explicit rights-creating terms, a plaintiff suing under an implied right of action still must show

that the statute manifests an intent 'to create not just a private right but also a private remedy.'" *Id.* (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).

i.   <u>Count II</u>

Defendants argue that Count II affords Plaintiffs no basis for relief under § 1983 because the provisions of the Medicaid Act relied upon by Plaintiffs do not create a federal right enforceable by Medicaid Providers.  (ECF No. 9-1, p. 13.)

"[Section] 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga*, 536 U.S. at 285.  "One cannot go into court and claim a violation of § 1983 – for § 1983 by itself does not protect anyone against anything."  *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617 (1979).  "Plaintiffs suing under § 1983 do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes.  Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983."  536 U.S. at 284.

The Complaint alleges:

> The Medicaid Act defines "medical assistance" as "payment of part or all of the cost of … care and services" included in an enumerated list of twenty-seven (27) medical assistance categories. 42 U.S.C. § 1396d(a).

> The Medicaid Act provides that the state plan for medical assistance must provide all who wish to apply for medical assistance with the opportunity to apply and that assistance shall be furnished with reasonable promptness to all eligible individuals.  42 U.S.C. § 1396a(a)(8).

> In violation of 42 U.S.C. § 1396a(a)(8) of the Federal Medicaid Act, the Defendants, while acting under the color of law, failed to provide payment to the Plaintiffs for approved services rendered with "reasonable promptness."

The state plan also must provide for making medical assistance available, including at minimum, the care and services listed in paragraphs (1) through (5), (17), (21), (28), and (29) of 42 U.S.C. § 1396d(a). 42 U.S.C. § 1396a(a)(10).

Defendants' failure to remit payment for long-term care Medicaid for those applicants who received proper Notices of Eligibility within one year is an unreasonable delay where applicants have been approved for Long-term Care benefits, Plaintiffs have been providing round-the-clock skilled nursing care, and the PRU unit has failed to promptly or timely pay approved benefits.

The Defendants' violations, which have been repeated and knowing, entitle the Plaintiffs to relief under 42 U.S.C. § 1983.

(ECF No. 1, ¶¶ 85-88, 91, and 93.)

Section 1396a(a)(8) provides that any individual may apply for medical assistance, and if an applicant is determined to be eligible, he or she is entitled to reasonably prompt medical assistance. Based on the plain language of § 1396a(a)(8), Congress intended for Medicaid beneficiaries to receive reasonably prompt medical assistance. Section 1396a(a)(8) does not evidence Congressional intent to create a federal right to reasonably prompt payment for Medicaid providers like Plaintiffs. *See Bio-Med. Applications of N.C. v. Elec. Data Sys. Corp.,* 412 F. Supp. 2d 549, 553-54 (E.D.N.C. 2006) ("Section 1396a(a)(8) does reference individual recipients. The section requires state Medicaid plans to 'provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals.' However, to the extent that this section does reference individual rights, it still does not indicate that such rights are to be enforceable by a private cause of action by the Medicaid providers, such as plaintiffs here.") Because Plaintiffs have not identified a federal statutory provision that grants them a federal right, they may not proceed on their § 1983 claim for violation of the reasonable promptness requirement, because the right of reasonable promptness belongs to the Medicaid beneficiary. Accordingly,

Plaintiffs have not alleged an injury in fact sufficient to confer standing.  The Rule 12 (b)(1) Motion will be granted as to Count II.

ii   <u>Count III</u>

Defendants argue that Plaintiffs lack standing to bring their claim under Count III because the Medicaid Act provisions that Plaintiffs rely upon do not create private federal rights enforceable under § 1983 or through any other means.  (ECF No. 9-1, p. 14.)

Count III of the Complaint asserts a cause of action for violations of 42 U.S.C. § 1396a. Although Count III is not brought under § 1983, the first part of the analysis is the same – whether the statute shows Congress intended to create a federal right.  *See Gonzaga,* 536 U.S. 273*, supra.*

The Complaint alleges:

> Before approving a state Medicaid plan or amendments, CMS must conduct a review to determine whether it complies with federal requirements. CMS will only approve proposed state plans and amendments if they comply with federal statutory and regulatory requirements. *Wilder v. Virginia* Hospital Assn., 496 U.S. 498, at 502.

> An amendment to a State's Medicaid plan must "provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan … as may be necessary to safeguard against unnecessary utilization of such care and services and *to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area*." 42 U.S.C. § 1396a(a)(30)(A) (emphasis added).

> The implementation of unapproved procedures that restrict payment for nursing facility services provided to Medicaid beneficiaries without a mechanism in place to appeal or review rejections not only harms the beneficiaries who are saddled with unsurmountable medical debt, but it prevents care providers from remaining in business to serve the general populations.

(ECF No. 1, ¶¶ 99-100 and 102.)

Section 1396a(a)(30)(A) sets forth the requirements for an amendment to a state's Medicaid Plan and provides that an amendment must have sufficient procedures for payment of care and services so that care and services will be available.  While § 1396a(a)(30)(A) mentions providers, it does not create rights for providers.  Rather, § 1396a(a)(30)(A) requires sufficient methods and procedures be in place to ensure that care and services are available to the general population in a given geographic area.  Congress intended that § 1396a(a)(30)(A) benefit the general population, not Medicaid providers.  The court finds the reasoning in *Bio-Med* and *Burlington United Methodist Family Services v. Atkins* persuasive.

The *Bio-Med* court explains:

> Rather than focusing on the individual, the language of these Medicaid provisions is akin to the type of institutional policy and practice language that the Supreme Court specifically found did not support a finding of Congressional intent to create individual rights. *See Gonzaga*, 536 U.S. at 288; *see also Blessing v. Freestone*, 520 U.S. 329, 343-44, 117 S. Ct. 1353, 137 L. Ed. 2d 569 (1997) (concluding that Title IV-D of the Social Security Act, governing evaluation of state Title IV-D programs, did not give rise to individual rights). The language of these sections set forth procedural requirements for state plans, rather than create individual rights for Medicaid providers or recipients.  As such, the undersigned concludes that these sections do not clearly evidence Congressional intent to create individual rights enforceable through a § 1983 private cause of action. These Medicaid statute sections, therefore, are insufficient to support federal subject matter jurisdiction over this case.

*Bio-Med. Applications of N.C. v. Elec. Data Sys. Corp.,* 412 F. Supp. 2d 549, 553 (E.D.N.C. 2006).

The *Burlington* court instructs:

> The language is dense and complex, but breaks down into four requirements concerning payments. The state plan must provide methods and procedures to assure that payments to providers produce four outcomes: (1) efficiency, (2) economy, (3) quality of care, and (4) adequate access to providers for Medicaid beneficiaries.

> The first two required outcomes, efficiency and economy, relate to the state program, not providers. An indirect effect of these provisions on providers would be to limit the amount of payments, consistent with efficiency. At any rate, no rights for, or duties toward, providers are created by these directives.
>
> As other courts have recognized, the remaining provisions for quality of care and adequate access are "drafted … with an unmistakable focus on" Medicaid beneficiaries, not providers. *Pennsylvania Pharmacists*, 283 F.3d at 538 (quoting *Cannon*, 441 U.S. at 691). Enlisting enough providers so that adequate care and services are available to the general population could benefit providers indirectly, but this language creates no duty for states to use certain rate-setting methods or to pay certain rates. If there is a duty here, it would appear to be to beneficiaries, but that question is not presented by this case.

*Burlington United Methodist Family Services v. Atkins,* 227 F.Supp.2d 593, 596 (S.D.W.Va. 2002).

In addressing whether §1396a(a)(30)(a) creates a private right for providers, the First Circuit Court of Appeals held:

> Prior to Gonzaga, whether subsection (30)(A) authorized private rights for providers was a close question; the circuits were split on the issue, and well reasoned opinions had been written on both sides….Whether Gonzaga is a tidal shift or merely a shift in emphasis, we are obligated to respect it, and it controls this case. Providers such as pharmacies do not have a private right of action under subsection (30)(A); if they think that state reimbursement is inadequate--and cannot persuade the Secretary to act--they must vote with their feet.

*Long Term Care Pharm. Alliance v. Ferguson.,* 362 F.3d 50, 58-59 (1st Cir. 2004).

Because the court finds that §1396a(a)(30)(A) does not create a federal right for Plaintiffs, they do not have standing to bring a claim for violation of § 1396a(a)(30)(A) by way of § 1983 or an implied cause of action. Accordingly, the Rule 12(b)(1) Motion will be granted as to Count III.

### III.    12(b)(6) MOTION

#### A.    Property or Liberty Interest

In Count I, Plaintiffs allege that Defendants violated their due process rights under § 1983. Count II alleges violations of the Federal Medicaid Act's reasonable promptness requirement.  As argued in support of their 12(b)(1) Motion, Defendants argue that Plaintiffs fail to state a claim upon which relief can be granted under § 1983 because they have no right to recover for the violation of someone else's rights.  (ECF No. 9-1 p. 15.) Based on their arguments in support of the 12(b)(1) Motion, Defendants assert that Plaintiffs fail to state a claim upon which relief can be granted under Count III because 42 U.S.C. § 1396a(a)(30)(A) does not create a federal right privately enforceable under § 1983 or through any other means.

To the extent Defendants reiterate their 12(b)(1) arguments in their 12(b)(6) Motion, the court's analysis set forth in Section II. B. applies.

#### B.    Due Process Claim

Defendants argue that to the extent Plaintiffs intended to plead a cause of action for violation of due process rights distinct from § 1983, the Complaint fails to state a claim for relief under the elements of either a substantive or procedural due process claim.  Plaintiffs counter that they have properly pled a procedural due process claim.  Plaintiffs do not argue that they have raised a substantive due process claim; therefore, the court will only address Plaintiffs' procedural due process claim under Count I.

"To properly plead a due process violation, a plaintiff must plead sufficient facts to show that he had a cognizable property or liberty interest, and that he was deprived of that interest without due process." *Sheppard v. Visitors of Va. State Univ. & Henry Debose,* 2019 U.S. Dist. LEXIS 198012 *8 (E.D.Va. Nov. 14, 2019) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569-71 (1972)); *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314 (4th Cir. 2012).

"The Constitution does not create protected property interests." *Sheppard,* U.S. Dist. LEXIS 198012 at *8 (citing *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 721 (E.D. Va. 2015) (quoting *Equity in Athletics, Inc. v. Dep. of Educ.*, 639 F.3d 91, 109 (4th Cir. 2011)). "Instead, a property interest must be created by some other source, such as state law or rules entitling citizens to certain benefits." *Id.* (citing *Roth*, 408 U.S. at 577.) "For a property interest to be protected, a person must have a legitimate claim of entitlement to the property interest, not have merely a desire for it." *Id.*

As discussed in Section II. B. 1., the court finds that Plaintiffs have pled adequately a cognizable interest in payments for services rendered to MA-LTC eligible residents. Therefore, the court will analyze whether Plaintiffs have pled facts that they were deprived of their property interest without due process.

The Complaint alleges:

> Approved Notices of Eligibility are not being paid, and to effectuate this end, Maryland created another entity, the Problems Resolution Unit, or PRU, where Notices of Eligibility are redetermined without issuing redetermination notices; that is, they are determined a second time, without issuing redetermination notices. A Notice of Eligibility indicates that claims shall be paid to the provider. If Maryland/PRU wanted to change the Notice of Eligibility, Maryland/PRU would have to issue a redetermination notice while paying any claims in the interim. This is not occurring.

> By definition, redetermination and recoupment notices are required to have appeal rights. In addition, if Maryland/PRU wanted to recover any funds paid out in claims, Maryland/PRU would have to initiate a recoupment, which would also have appeal rights. If Maryland/PRU followed proper procedures rather than bypassing the redetermination and recoupment steps, providers would clearly have a property interest in any redetermination or recoupment and, therefore, appeal rights. *Matter of White Plains Nursing Home v. Whalen* 53 A.D.2d 926, 927 (1976) (concluding that a nursing home has a property interest in alleged overpayments). Instead, PRU simply denies, with no due process, properly submitted claims to avoid paying.

> Without appeal rights, which Defendants' policy controls, there is no due process and no administrative recourse – which is the harm, and money is owed – which is the damage.
>
> Medicaid Beneficiaries have a Constitutionally-protected property interest in Medicaid applicants' benefits.
>
> Long-term care skilled nursing providers have a protected property interest to receive reimbursement for long-term skilled nursing care services which have been/are being provided to approved Medicaid long-term care applicants/recipients.
>
> Defendants deprived Plaintiffs of their property interest to which Plaintiffs had a legitimate claim of entitlement by failing to provide notice of denial of benefits and failing to provide an opportunity to appeal denied benefits.
>
> Defendants deprived Plaintiffs of their property interests to which Plaintiffs had a legitimate claim of entitlement by failing to provide notice of redetermination of benefits and failing to provide an opportunity to appeal the redetermined benefits.

(ECF No. 1, ¶¶ 28-29, 31, and 67-70.)

The court finds that Plaintiffs have pled sufficient facts that they were deprived of their property interest without due process. The Complaint alleges that Plaintiffs rendered services to Medicaid eligible residents and submitted claims for payment of their services. Plaintiffs further allege they were not paid because of the PRU redeterminations about which neither residents nor Plaintiffs were made aware. Further, because Plaintiffs were not given an opportunity to appeal non-payment for services it had already rendered to eligible residents, coupled with the lack of notice, they have adequately pled violations of due process. Accordingly, the court finds that Plaintiffs have pled sufficient facts as to Count I to survive the Motion pursuant to 12(b)(6).

### C.   Dates of alleged wrongful conduct

Defendants argue that the Complaint fails to specify facts regarding the alleged damages Plaintiffs have suffered, including when services at issue were made and when claims for payment

were presented.  In support, Defendants offer that Plaintiffs' failure to provide specific dates of Defendants' alleged wrongful conduct deprives them of the opportunity to assert a statute of limitations defense.  (ECF No. 9-1, pp. 17-19.)

The court finds that Plaintiff has alleged sufficient facts to survive a motion to dismiss under Rule 12(b)(6) as to Count I for the reasons stated in Section III. B.  To the extent Defendants argue that the lack of specific dates or resident patient identities prejudices their ability to mount a defense, the court finds that argument to be without merit.  Defendants are free to assert any affirmative defense to the extent, in good faith, they anticipate or assert that discovery will support; or to amend their answer in accordance with the Rules and orders of court as appropriate. Accordingly, the Motion will be denied on this basis.

### D.   DHS involvement in payment of claims

Defendants argue that Plaintiffs have failed to allege specific facts demonstrating DHS has or had any involvement in the payment for services rendered for eligible MA-LTC beneficiaries, or the redetermination of eligibility by the PRU.  Accordingly, Defendants assert, Plaintiffs cannot plead facts that Defendant Padilla or DHS failed to properly make payments to Plaintiffs.  (ECF No. 9-1, pp. 19-20.)

Plaintiffs allege:

> Defendants are directly responsible for policies and procedures which have caused harm to Plaintiffs and the residents in their facilities. Maryland's policies and procedures have violated Plaintiffs' due process rights and certain provisions of the Medicaid statute, 42 U.S.C. 1396a, et seq. Further, Maryland's policies and procedures have never been approved by the Centers for Medicare and Medicaid Services (CMS), all in violation of applicable, controlling, legal authority.

> Defendant Padilla is the Secretary of the Maryland Department of Human Services ("DHS"), the state agency charged with administering and supervising Maryland's Medicaid program. At all times material to this Complaint, Defendant Padilla acted under

color of state law in administering the regulations, customs, policies, and practices material herein. She is sued in her official capacity only.

(ECF No. 1, p. 3 and ¶ 22.)

Plaintiffs allege more than just non-payment for services rendered; Plaintiffs assert that Defendants are responsible for the policies and procedures that result in non-payment of claims for services rendered to eligible residents. Even if Defendant Padilla and DHS are not directly responsible for issuing payment, they are responsible for creating the policies and procedures to effectuate the state's Medicaid program.  Accordingly, the Motion will be denied on this basis.

## CONCLUSION

For the reasons set forth herein, the Motion (ECF No.) is **DENIED** with respect to Count I and **GRANTED** with respect to Counts II and III. This case shall proceed as to Plaintiffs' Due Process claim (Count I).

A separate order follows.

_____/s/_____
Julie R. Rubin
United States District Judge

January 30, 2023